Case No. 13-5335, Cause of Action, Appellant v. Federal Trade Commission. Mr. Gabor for the Appellant, Ms. Townsend for the NECA SCRI, and Mr. Mayer for the Appellate. May it please the Court, I'm Arnold Gabor and I represent Cause of Action in this FOIA appeal. This case presents a strong example of how important FOIA fee reduced and waived access to documents is for public interest alternative media non-profits and the post-open government act of 2007 regime. This Court should reverse and remand the District Courts grant the summary judgment, and building on Appellant's briefs, it should do so particularly on the grounds of mootness as it relates to Cause of Action's third FOIA request. Appropriate readings are not what keep cases from being moot. You have to have something in injury that's remediable in order to court. The remediable nature of the third FOIA request is that there is materials that the agency did not search for. Bloggers, in particular, was part of the search term, which was not included in item three of request one, which specifically just stated social media authors. I understand that the position is that they made the same search they would have made with or without the word blogger being in it. Am I not correct in this? Your Honor, that is Appellee's arguments, but bloggers are wholly separate from social media authors. And if you allow me to complete my argument on this, it's very important because there was at least one... We don't allow people to make unadopted arguments. I welcome it, Your Honor. There's at least 100 pages, at least, that were produced based on FOIA request one, item three. And if that amount was also considered, if not much larger because of the inclusion of bloggers... Tell me the order that the district court would draw that would grant remedy based on the third application. Excuse me, Your Honor? Tell me the order that the district judge would enter that would grant justiciable type of relief based on the third application. They've already given what you were asking for. Well, Your Honor, the justiciable relief would be that the third FOIA request was indeed not moved because a fee waiver analysis was required because it was more than $25 of reproduction fee. If you get the fee waiver, you get the service free, right? But under the fee waiver for news media requester, you get the search and the review for free. Right. And you got the search and the review for free, right? Your Honor, we didn't get the full search. Cause of action did not get the full search because bloggers was not included. And specifically... So what would the order say then? With request one, item three, because the inclusion of the word bloggers in the search term would lead to a different and larger result. And secondarily, if you take a look at the first request, Your Honor, request three, and the affidavit provided by the Federal Trade Commission, the FTC specifically states it reviewed and selected 100 pages, which implies, and we can infer reasonably, that there were larger than 100 pages in the first search. We don't officially know how many pages that search for item three of request one actually created. And that's part of the issue here. And that is justiciable and that is appropriate for remand. But secondarily, the news media requester status, the standard was anachronistically applied by the district court and the FTC. So you get to that point without the third application at all, can't you? You had two prior requests. I mean, if you can let me get that question, all right? There are two prior requests, but the third request is also important because it stands on its own. And I see I'm having limited time. I want to provide my co-counsel with the ability to speak. But specifically, news media requester status in the Open Government Act of 2007 specifically voids the FTC's regulation. Before you get to that, we'll give you some more time. Just on the third request, did you in the third request provide more information about your status under either the news media or the public interest? Absolutely. There was a larger track record. Okay, so if that's the case, I was wondering whether you might rephrase what you're really asking for here is, regardless of whether request one of request three is new or not, that is, regardless of whether it's additional bloggers made any difference, you are now again asking for the same thing you asked for before, but you're now supplementing on the record before the agency the evidence that you come under one or the other of the categories. You realize that's an excellent way of phrasing it. Okay, I appreciate it. Thank you. So at least as to that, we would be able to consider the additional record that you made with respect to the third request, even if it makes no overall difference. It may make a difference in terms of whether you get the waiver for basically the same materials. Yes, Your Honor. And particularly with regard to the waiver, news media requester 552A2A4, what's most important here are three points. First is that the district court and the FTC anachronistically applied a pre-open government act of 2007. Let me just say this. Since you've persuaded us, at least me, that the rule is de novo, that we review de novo, it's not very hard to persuade me because the statute says so. It really makes no difference whether the district court made a mistake or different or whether it didn't or whether the agency regulation is good or bad, does it? Since we have to review de novo, the meaning of the statute, why does it make any difference whether the agency has a regulation that fits the statute or not or whether the district court followed the law? Why does that matter? The only thing that matters, Your Honor, is that the open government act of 2007 was followed, and that wasn't followed here because that regulation was voided and the district court and the agency relied upon it. The only thing that matters is that we follow the open government act today. So if you could make your argument, assuming nothing, assume two things, both required by the statute. One is that we have to decide this de novo, and two, that your record is limited to what you filed, and I'm going to give you all three, whatever you filed with respect to the first, second, and third requests, but none of the additional material that you provided in court because that's outside the record. Your Honor, the open government act of 2007 and these particular requests satisfy the news media request for status fee reduction burden because there was a sufficient record, specifically on A181 of the appendix. Causative action clearly states that it has a website that has memoranda, reports, press releases, two active newsletters, Twitter, Facebook, and with the inclusion of the alternative media definition that is now part of the news media request for status, all three of the elements, first, which the district court agreed with, and this court should as well, entity that gathers information of potential interest to a segment of the public. Second, it uses its editorial skill to turn raw materials into distinct work. There is an ample record for that, and specifically, a diversity or a multitude of sources is not per se required, but even under that standard, which we know- Let's talk about each of the actions. I'm with you that there's a lot of extra words in a lot of the case law that doesn't appear in the statute, so we could just follow the statute itself. Correct. So the editorial skills to turn raw materials into a distinct work. I take it you agree that if all you did was put on your website what you got from FOIA and you didn't do anything with it, that would not be sufficient, right? Correct. That would be a repository. All right. And so what did you do to the material that you would- Well, what have you in the past done, or are you planning to do with the material that you get from FOIA? The FOIA request specifically states that Cognitive Action was going to write two reports based on the materials that the Federal Trade Commission would produce in response to the request. And that's what you said, A181. I think A181 is the diversity of the sources. We intend to create two reports, how the FTC denies fee waivers- Oh, correct, yes. And the FTC and the guides concerning endorsements, why they change. So those are two reports that Cognitive Action specifically stated that it would have the desire to create based on this information. Anything else? Anything else with regard to editorial skill training to run the material into a distinct work? Yes. There were other pickups of Cognitive Action's work involving these items. One example being the Washington Times printed a story involving this exact type of work that Cognitive Action did. Now, this is separate from dissemination itself, but it's further evidence that's on the record of Cognitive Action taking raw material, editorializing it, and creating distinct work. When we say they picked it up, they published some kind of article that you wrote, or they used the FOIA material to write their own article? They produced an article. But that's not enough that the Washington Times used its editorial skills. It's based on cause of actions, editorialization, and analysis of raw material. I see. And in what form was that? In what form did cause of action apply its editorial skills and then give it to Washington Times? A press release or a report or what? I believe it was a press release at a minimum. Getting to the third one. Is that a record somewhere that we can verify your belief had a foundation in the past? That is not in the record. However, the Washington Times story is in the record. And does the Washington Times story say that – does it reference cause of action? I believe it does. Unfortunately, our record doesn't have it in it. Correct. It's not reproduced. Right, but does it say that cause of action provided us with this memorandum of its opinion about this, or does it quote somebody from cause of action saying the FTC is bad, or anything that would suggest some statement by cause of action other than here's what we got from FOIA? I believe it does. And if it doesn't, I'll supplement this court with a 20 HA to inform it. I believe it does. And then another question I have is the statute requires that the work be distributed to an audience. Correct. So do you agree that an audience of one wouldn't be enough? I would state that under the standard, there shouldn't be a quantitative limitation, but an audience of one isn't enough. Yeah, all right. I understand the idea that it doesn't have to be a broad audience. I completely get that. But I'm struggling with what Congress meant by audience. Audience doesn't sound like one. And what does it sound like to you? I think it sounds like drawing quantitative limitations, particular numbers, I think is very dangerous. Okay. So what do we do instead? So what do we do instead is we can take a look at this record. And cause of action makes statements that are not refuted, and in good faith, and the court should presume their veracity, that it had Twitter, Facebook, you know, its website. Yes, the website was viewed twice, and it was under construction at the time the FTC viewed it, but the website was there, and that's included in cause of action's declaration. By the end of the administrative record. Certainly, during the administrative record, and that's included in the affidavits. But do we know anything, even if we can't quantify, we shouldn't use quantification, do we know anything about how many hits on the website, how many Twitter followers, anything at all? Your Honor, that data is not included in the record, but that data per se should not need to be included in the record. I think statements that, if you take a look at the entire administrative record in the totality, I think there's sufficient and ample evidence to demonstrate that prong three of the newsletter requester standards, should that work to an audience, is satisfied. So that, that is to me. Your Honor, I heard you tell us where it was satisfied. And I hear the Chief Judge asking you the specifics of how you're satisfied, and I then hear you say that there's, it is satisfied. Where would I look in the record to find out that there is an element? Well, Your Honor, the statement that Clause of Action makes, it does not include quantitative data. Tell me what it is that tells me there is, that you have complied with the audience requirement of Section 181, Romans 3. So he's pointed us to 181 for the editorial effect. Can you, the editorialized skills. Can you point us to a page which is your best page about your audience, that there is an audience, regardless of the quantification of the audience, that there is whatever it is we ultimately need. Maybe it's worth two minutes. Tell us where we can find out. Well, Your Honor, pages 48, 157 to 60, and 181 to 184 talks about Twitter and Facebook, social media contacts, including press releases. Clause of Action also informed the FTC that its contacts with news media organizations regularly feature its work. And if you take a look at 167, Note 7, there are 18 specific examples of news media entities that have shown interest in Clause of Action's work. Okay. What page was that? 167, Note 7. What's that part of? I'm sorry. Sorry, Your Honor. Page A167, January 27, 2012 letter. There are 18 specific examples of news media entities that have shown interest in Clause of Action's work. Can you tell me the words in this footnote that support the proposition that the maker of the article is your audience? Your Honor, those articles are in the record, and specifically I refer the Court to Judicial Laws v. Rosati and Public Integrity, Center for Public Integrity. These are detailed and non-conclusory demonstrations of how and to whom Clause of Action was disseminated to work. And specifically, I think the Court should focus on not requiring a detailed game plan with specific metrics. Well, we have to focus on compliance with the statute. That's what we're here for. Absolutely. And you're giving us portions of the record that don't really tell us what you say they do. No more in footnote 7 does it tell us that these articles contain anything that is based on anything you publish. Well, Your Honor. If the articles exist, I believe that they exist, but how do they support the proposition that the author of the article is your audience? Well, Your Honor, I think they support the proposition, we believe, because they rely on Clause of Action's work. How do we know that? What's in the record that tells us they rely on Clause of Action? It's the record before the Court. I can't editorialize myself. Well, let me ask you about it. Remind me about what happened. So here's a long list of articles, which are also many of them in the December 12th letter, and you say that these reflect Clause of Action's work, right? Correct. And we obviously don't have the articles. That doesn't mean they're not in the record. That is in the sense that once you have provided the agency with a list of the articles. That should be sufficient. That should be sufficient if they say what you say they say. So I'm just wondering whether it was incumbent on the District Court to actually – do we have any idea whether the District Court ever looked at these articles? To my knowledge, the District Court did not look at those articles. The District Court reviewing De Novo probably should have taken a look at the entire record. Moreover, Your Honor, I'd also add on page 48, page 48, Clause of Action talks about its own newsletters that it publishes. Yes. And that's also there. I mean, as far as the audience. Do we need to know whether they publish it into the air or whether anybody is there on the other end? Well, I think common sense can dictate that if these newsletters are being published, it's not some sort of subterfuge to defeat a fee waiver status for FOIA. Wouldn't it have been easy to say how many? I mean, to be fair, wouldn't it be easy? Wouldn't it have solved a lot of our problems if you had said that we publish a newsletter and it has an audience of, I don't know, 100? Then you could say 100 is enough. Your Honor, that's certainly something that could have been included in the record. But also keep in mind there's evidence in this record that Clause of Action consulted with OGIS for a third FOIA request. In good faith, it was doing its best at the time to comply with the statute. So, yes, that specific quantification is missing, but there's no law that requires quantification on its face. But there is a law that requires audience. And I don't know how you think we can determine audience without something that you would call quantification. That is, if there's only one person, we still have to count that person, though there's one of you. Your Honor, that's... You don't seem to be connecting. Your Honor, we believe that the court can infer and the district court should have inferred, based on the record before it, that an audience was there, a sufficiently large audience to satisfy the statute. Why would we infer that? From what would we infer? From the very materials that I just cited to you. That if newspapers and articles are being produced, newsletters are being disseminated, that they're going to the audience. It's like a newsletter is being disseminated in the sense that there may be someone on the other end. I'm looking at 48, and I'm seeing the same thing that Keith just saw, which does not include something telling me that there is a dissemination. You use the word dissemination. But it doesn't tell me if that's... I don't think that's even in the newsletter anyway. Unless somebody's getting it, there isn't an audience, is there? Correct. But, Your Honor... Whether we quantify this person or not, there has to be a person getting it, doesn't it? Correct, but I think common sense would dictate that that's occurring here. Unless the court has further questions. Don't worry, we do. I have one further question, I guess. Without reference to what you specifically put into this record, can you articulate what the standard should be? Because so far I've only heard what you think should not be required. You said not a detailed game plan, not a qualitative standard. What would it look like? What's the verbal formulation for a district court that's trying to figure out whether this fee waiver was properly developed? I think the proper standard, obviously, is drawn from the statute, the lives of the National Security Archive, as well as the inclusion of alternative news media as far as method of dissemination. I'm sorry to interrupt you, but the problem with the statute is that it seems to be doing two different things. It uses National Archive's kind of expansive language. It also puts in those examples, which are actually kind of back to OMB's very narrow description of what such an entity is. So what I'm trying to figure out is, what after the 07 amendments should that standard look like? I think that standard should be unburdened of OMB's SPHERA 87 guidelines. That incorporates and creates for the first time this organized and operated standard. It should be unburdened specifically because Congress had an opportunity to choose it and decided to go with National Security Archive and draw inference from the Department of Defense standard for alternative news media. So taking into context that there is ample legislative history, and even in the Open Government Act 2007, the precatory language itself to that statute, FOIA needs to be construed liberally. And specifically, Senator Patrick Leahy indicates that the amendments in the Open Government Act of 2007, this is the cause of actions page 28, cover individuals performing a media function who do not necessarily have a prior publication history. So that's something that Senator Patrick Leahy specifically stated. And more so, and I think important for this court to consider, even with the SPHERA amendments which gave rise to OMB's narrow organized and operated standards, Senator Leahy also indicated that experience suggests that agencies are most resistant to grant fee waivers when they suspect that the information sought may cast them in a less than flattering light. And here, where cause of action specifically states the report that it's going to create from the material, the raw material that FCC produces, would lead to that conclusion. So if you emphasize the Leahy language, don't you get right back to the problem of audience of one? You know, everybody who thinks there's a bogger now thinks they also should qualify. So all I'm trying to figure out is somewhere along that spectrum, is there an articulable standard? I think that with the facts before this court, when a 501c3 nonprofit public interest organization makes FOIA requests indicating that it has not just Twitter or Facebook, but that it has newsletters, memoranda, reports, news releases, and that its work is being covered by news media itself as well, its editorialized work, that is sufficient to satisfy the news media requester fee reduction. I don't know if the court has any further questions. Yeah, I do. Sorry. I take it you're not giving up on your public interest request. No. Or are you? No, the court's motion does not concede that. It's emphasizing news media requester. So with respect to the word significantly, contribute significantly, do you think that's essentially the same meaning as in the news media element? Significantly must mean that at least more than one person, that they're distributing to more than one person? Or what do you think the word significantly means? I think significantly likely means more than one person. But, you know, the request of information, you know, there's a threshold level for public availability. And it's about the public understanding. Well, I got the public. I'm only focusing on the word significantly. I understand your argument about public understanding of the operations. I understand. Actually, I understand all of your other arguments. It's just what does the word significantly mean? Do you think it's basically the same thing as what we're struggling with with respect to news, that there be some audience that you can't contribute significantly to public if you're not distributing to some significant amount of the public? I think there needs to be the availability or the ability for the audience to access the information. And the word significantly likely means more than one. Again, staying away from the quantitative consideration that Congress did not articulate in the statute itself, still having this information available online and also a cause of action active dissemination consistent with previous arguments is sufficient to meet Part 4 of the Public Interest Fee Waiver Standard, 552.43. What about primarily in the commercial interest section with respect to your interest about other people's waivers? I take the government's argument to be that what you're trying to do in the interest of the requester is to help advance your argument, we're as good as them and therefore we're the same as them and therefore we should get a waiver just like they did. I think undoubtedly that could be part of it. But I think what's also important is that cause of action specifically stated was going to write a report on these types of questions. And I think for public accountability advocacy purposes, cause of action genuinely intends, continues to intend, to inform and educate the public on the discrepancies of Federal Trade Commission's practice of potential so like the fee waiver provision, the fee reduction and fee waiver decision making. So how much are we supposed to deal with intent? You said you intended. The news media section has a specific set of sentences about freelance journalists and it seems clear from that that just intending to write an article isn't enough, right? Because it says a freelance journalist shall be regarded as working for a news media entity if the journalist can demonstrate a solid basis for expecting publication through that entity. So a freelance journalist, what do we do with the freelance journalist section? Doesn't it tell us something about something more than intent? Does it tell us something that something more than intent is required? I think that if we take a look at why that provision was added, I think it's the changing realities of how news media and how dissemination methods have evolved since the FOIA 66, since the Shearer Amendments, that we're in an age where newsprint media has essentially been decimated. Even television news media has been reduced. And now the medium of dissemination typically is the Internet. I got all that. So therefore you would think that it would be a very liberal standard. It should be liberally construed. But we still have words that we have to construe. So it says a freelance journalist shall be regarded as working for a news media entity if the journalist can demonstrate a solid basis for expecting publication through that entity. And then it gives us an example. A publication contract would provide a solid basis. Past publication record would provide a basis. But that suggests that merely saying, I'm a freelance journalist. I want to do an article about X. I'm going to send it around to a lot of magazines, and I hope one of them publishes it, would not be enough. We agree that would not be enough for a freelance journalist. I think your interpretation is not an unreasonable one. However, that example is not dispositive of the broader interpretation of the alternative media language that precedes it. So if we're taking a look at the language of the statute itself, the prior sentence identifies alternative media, of which one example is provided, the freelance journalist. Cause and action isn't alleging or arguing that it's a freelance journalist. I don't know whether you're right about that. I think your argument would be stronger if you said the freelance journalist is not an example of alternative media. It's just a separate thing, and we're not in that category. We're in the alternative media category. That's also perfectly plausible. It's better for you. I'm not saying it's right, but it does seem to me. Freelance journalists were around long before the alternative media. There's nothing new about freelance journalism that has to do with the change in the 70s. I think your honors identify an excellent point, because the Federal Trade Commission's 2014 regulation, they're not specific with federal alternative media. It just talks about a freelance journalist as an example. So I think that's an excellent opportunity for this court to consider these as two separate arguments and two separate bases upon which cause and action could satisfy. I want to go back just for a moment to the adverb question significantly. Your discussion with the chief, and I'm not quoting you or him, but that concerned the audience. Does the adverb also apply in itself to the content? That is to say, does it have to significantly contribute to the understanding in the sense that it does something significant with respect to what the knowledge is without respect to how many are in the other ones? I'm not very clear, I'm afraid. You're referencing Prong for the public interest waiter? The use of the word significantly on the understanding. So this would be the public interest waiver, which would be separate provision under the statute part three. Well, this court has a prime, Judicial Watch v. Department of Justice, the 2004 opinion, public interest fee waiver rule and analogous fee waiver rule. This is, I think, important that the significance of the understanding, the likely contribution I think goes to the content itself. That's what I'm asking. Not just how many people would be getting more understanding, but whether the quantum or nature of the understanding is enhanced by the release. Correct. And I think that the nature of the request itself and the explanation of why the request is being made is perfectly illustrative that that would occur. And specifically, it's sort of tied in somewhat with part one of the public interest text, which says the subject matter of the requested information concerns the operations activities of the federal government, and two, the disclosure is likely to contribute to an understanding. So the contribution to the understanding is really part two, which the district court properly viewed, and this court should as well, is satisfied, at least with requests one and two third being moved. So we still have the word significantly. You've left that out of your analysis so far. You've got part one and part two, but we have the word significantly. I think significantly goes to the public understanding itself. The nature of the understanding that would be conveyed with the material that is then made public. But not how big the audience is. So imagine that this provided a very significant, well, we have the word public still, so somehow this has to mean for the public. You couldn't just email it to your friend, and that would greatly enhance your friend's understanding of the FTC's operations, but nobody else's, right? Correct. We get into that slippery slope of, you know, an audience of one. However, a cause of action specifically stated the nature of the report that it was going to create. And even the title themselves and the language preceding those titles, why this is important, why cause of action is concerned. On behalf of the public, as a public interest entity, certainly satisfies part four of 552A4A3. I take it if we decided the news media, we would not be done. We would still have to go on to decide the public interest. Correct. To the extent that the court does review de novo, the public interest is a fee waiver. And a fee reduction is a separate and less complete form of release. However, it can be an independent basis of release in the affirmative. And this is also to the extent that a court can certainly elect or not elect to remand with instructions, it can remand with instructions on the proper interpretation of these standards to the district court. Okay. Mr. Court, thank you very much. May it please the court, Katie Townsend. I'm counsel for, in the case of the Reporters Committee for Freedom of the Press. We appreciate the opportunity to speak before you today, Your Honors. And I will utilize the brief time I have to stress how vital it is. That FOIA as representative of the news media fee reduction category be interpreted consistently, broadly, and in conformity with congressional intent. Chief Judge Garland is absolutely correct to say the standard of review is de novo. And so, in some sense, all that matters is what this court determines today on review. However, as we detailed in the brief we submitted alongside and along with the Washington Post, NPR, and six other media organizations, it is critical that courts, district courts, apply the correct standard when determining whether a FOIA requester is a representative of the news media and that they utilize the post-2007 statutory language as the touchstone. Okay. I don't think anybody disagrees with that on either side or either on the bench or of the tables. The question is, what are those standards? So, what do you think? Do you agree? What do you think using editorial skills to turn the raw materials into distinct work means? And what do you think distributes that work to an audience means? We'll start with the editorial skills. And I don't mean to focus so much on what the district court determined, but I think it's a good example. The district court, for example, pointed to a pulled-out language from National Security Archive where it indicated that in order to demonstrate that you've exercised editorial skills, you need to be pulling information from a range of sources. We have the same discussion with other counsel. We know what's wrong with what the district court is. We're trying to figure out what's the right way to describe the test. At the end of other counsel's argument, he said, well, you could remand the district court with what is a correct. So, what is the correct view of what it means to turn raw materials into a distinct work? Editorial skills. And this court has said in EPIC and in National Security Archive that the editorial skills can include analyzing and synthesizing information from one source. It can point this court to a statement, albeit in dicta, in National Security Archive, that surely when a newspaper publisher, such as the New York Times, brings out the Pentagon Papers in the form of a paperback book, adding perhaps an introduction and an index, it is acting as a representative of the newspaper. But just doing it alone. I mean, the New York Times is an easier case because we're not only dealing with one item. They may have some editorial conduct and some other editorial content and non-editorial content, and the issue isn't what you're going to do with a particular FOIA request, but whether you are a news media overall. So, we have to look at what this particular entity has done or plans to do. I think you would agree if all they plan to do is put the fruits of the FOIA request on the web with no comment, that wouldn't be good enough, right? I think the record indicates that Cause of Action certainly had a publication plan of the type that National Security Archive anticipated and would utilize its editorial skills in selecting documents responsive to the FOIA request that were of interest to its audience. Certainly, selecting newsworthy material or determining what's newsworthy for a particular audience can be an exercise of editorial skills. So, that would mean selecting them in the form of a FOIA request would alone be enough. That is, if they issued, obviously they would apply some skills to their request, and then they said we're going to dump all of it on our website. Would that be enough? I misspoke if that's what I implied. No, Your Honor. I think utilizing the editorial skills in selecting documents that are provided in response, so selecting documents from that raw material you receive in response, highlighting what might be important, might be newsworthy out of those documents, putting those documents in context for an audience, tying them to a larger space. Now, what does the audience mean? This is the word we're having a lot of trouble with, as you can see. It's difficult. Frankly, it is a difficult question, and I think part of the reason it might be a difficult question is because today in this sort of new media environment that we're all living in, this sort of active, passive distinction that we've been able to focus on in the past, which is sort of this affirmative intent to publish or this affirmative action to publish, it becomes – it frankly does become more muddy because you can have a website, you can disseminate, you can publish things on a website, and that may – you might be able to characterize that potentially as sort of passive in the sense that the audience comes to you. The audience comes to you. Regardless of whether it's passive or aggressive, with the word distributes, suggests somebody at least has to read it, right? So even if we would agree that you can distribute by putting it on your website and having people come, you would agree that a website that has one hit and nothing else wouldn't be distributing to an audience, right? The one point of caution I will say with respect to the numerosity requirement, and I understand Chief Judge's concern that we don't want to sort of open up this news media requester category so broadly to make it so anyone with a Facebook page can claim to be a member of the news media. I do understand that concern. Do you agree with that? I think one of – Do you agree that anyone with a Facebook page, that's not enough to be a member of the news media? I agree that's not enough. I would also say, however, that I think – What if I have a lot of friends? I mean, really. I mean, let's say, I don't know, just pick somebody out of the audience there and they have a Facebook page and they have a lot of friends. And they say, I'm going to request these documents. I'm going to put them on my Facebook page. Well, I agree that Congress anticipated that Facebook and other forms of social media could be the mechanism of dissemination that's utilized. But you still have to meet all the other – you have to meet the other prongs of the category in order to qualify for news media requester status. So it's not that everyone with a Facebook page qualifies. Because they have to use editorial skills, et cetera. Precisely. All right, but what about how many? I appreciate that you don't want us to quantify, but we all agree one's not enough. What words should we use for describe? If we're going to remand with some words, what words would we use? I think maybe the best distinction is the distinction that was drawn in National Security Archive between the private repository, private library, and the sort of public dissemination, the public availability. I mean, I think if you are taking material that comes from FOIA requests and you're exercising editorial skills, and perhaps all you are doing is blogging about it, posting it on your website, that is a growing source of news for a large number of Americans. And I think that if you're doing that, you should, even if three people or a number of people whom you can't prove what number of people are reading your blog, you should be entitled because you have that publication, that plan, that publication plan, that intent and ability to disseminate your work. You should be entitled to the news media requester status. The one caution I will say about the numerosity requirement is that it's important, and I think Congress recognized this when it enacted the amendments in the Open Government Act of 2007, it's important to ensure that there's room for startups, that there's room for the person who is a freelance journalist who may not have a publication history that he or she can point to. What do you do with the language about if that's the case with respect to freelance journalists, why do they, why does Congress seem to be somewhat restrictive? So a freelance journalist shall be regarded as working for a news media entity if the journalist can demonstrate a solid basis for expecting publication through that entity, for example, a contract. So the mere intent, would that be enough? Or the mere hope, would that be enough? I think a publication plan, similar to that that was articulated by National Security Archive in that case, a plan for disseminating your work would be sufficient. I don't necessarily read this, and I don't think it's intended to be exclusive, that a freelance journalist only qualifies for news media requester status if they're affiliated with an entity. In fact, the legislative history indicates, I believe it was Representative Clay who first introduced the amendment in the House, indicated that agencies should not deny a request for status solely on the basis of the absence of institutional associations of the requester. So if a freelance journalist states, I'm going to attempt to have my work published by another entity, perhaps if I can't, I will self-publish this piece of work on my own blog on the Internet, that should qualify. To be clear, it is a low bar, and it should be a low bar, because Congress intended it to be a low bar. The goal of FOIA and the goal of these provisions is to get more and more. Nonetheless, it has to be a bar. Congress shouldn't just say, everybody who wants to come in here and get this fee waiver can just come in and ask for this fee waiver. We're having a real, and I understand why you're having trouble, but we're also having trouble trying to figure out what the standard is that we would put in the order that we would send back to the district court and put in the book for the president, as to how we would determine if we make the audience requirement significantly more effective. Can you add anything more to it? Do you agree that some track record is a relevant factor, not dispositive factor, but a relevant factor? I think it can be, yes, Ron, and I think Congress intended for, and specifically said that a publication record can be, the government may also consider the past publication record of a requester in making such a determination. Okay, further questions? Thank you. We'll hear from the government. May it please the court. My name is Peter Mayer, Counselor for the United States Government here at the Federal Trade Commission. With respect to the denial of the fee waiver for a representative of immediate status, I'd like to begin by making one point, and that is the FTC only rejected Cause of Action's application for that representative immediate status waiver with respect to request number one and request number two that they made to the agency. The material that Counsel for Cause of Action, however, cited in his presentation, that he believed demonstrated why his client was entitled to the fee waiver, was only submitted by Cause of Action with respect to the third FOIA request. That's why the portion of the appendix that he cites, 161, is a portion of a letter that Cause of Action wrote to the agency on April 4th, 2012. By that time, the agency had already taken final action in request number one and request number two, and those were the only two instances where it rendered a decision on the merits, rejecting Cause of Action's claim to status as a representative of immediate. With respect to number three, the agency never reached the merits of that decision because it found that to render that decision would be an advisory opinion based on the discussion that Counsel had with Judge Senton. Say that again? Who said it would be an advisory opinion? Well, I didn't know the Constitution applied to the FTC under Article 3. They used the term moot, Chief Judge Garland, as a shorthand for the advisory opinion. And that is to determine whether or not Cause of Action was entitled to status as a representative of immediate would not make any practical difference because they were not being billed any fees. Well, with respect to the first claim request of the third request, they didn't get those documents, right? No, the reason was because the agency had already provided them to the requester with respect to the first FOIA request. All of the documents in the first category? No, they gave them 100 documents, right? They determined that the request was duplicative. Let me make one point about the duplication because my opponent made a comment about this. He claimed that the item one of the third request was not the same. I understand your argument. Assume it was the same. But they didn't get all of those documents with a fee waiver in the past, right? They didn't. Let me explain why. What happened with respect to the first request was the FTC provided 100 pages to Cause of Action and said, here's 100 pages. We are rejecting your request for a public interest waiver. And that, in effect, stopped the music. Right. So there was no further production. I agree with the implication that the claims counsel drew. There were more than 100 pages. Right. So now they're applying for it again, and now they provide more information than they provided the first time. Why isn't that in the record, in the administrative record, in a request for the fee waiver? It is a request. Well, it is a request for the fee waiver, but the problem is that the disposition of the fee waiver was not erroneous in and of itself. It wasn't erroneous the first time, maybe, assumed for the moment, and maybe not the second time, but the third time when they provided more information, assuming it was more information, than why it's not moved until the court considers whether that additional information is helpful or not. Well, there's no need to consider the additional information if the agency is right that there are no more documents. So if the agency made an error, if the agency made an error. No more than 100 documents. That's right. If the agency made an error here, Judge Garland, it was with respect to the determination that there were no more responsive documents. The question is whether there are no more responsive documents that haven't been provided. Right. They gave 100. I'm not on the issue of whether we're talking about blogs or not. Just forget about that for a second. I understand. I'm on the question of whether there might be 200 more documents for which they have not yet gotten because they weren't willing to pay the fees and that they want a fee waiver for. The FTC hasn't really taken a position about that, has it? No, it hasn't. And certainly, as I said, there aren't 200 more documents. It has not taken that position. So what I'm saying is this. If the agency made a mistake, it was in determining that the request for the fee waiver was moot because there were no additional documents. That is a failure with respect to the underlying FOIA request. That is that they may have made a mistake in determining that they didn't have to process additional documents, which would have put them over the 100 number. Yes, and therefore the district court may have made a mistake in not asking whether the fee waiver issue with respect to that first category is still alive or not. Obviously, if all the documents in the first category have been provided and all the documents in the second and third are provided for free, then there is no fee waiver issue. And I can't imagine that they'd be complaining about that. The problem is they think there are documents in the first category that they didn't get because it stopped before. I think what the agency did here was arguably correct, but I can see that this is the most difficult question for the government in this case. So assume for the moment that we can consider the agency record as of the end of April of 2012. With respect to request three. With respect to all. Because respect three repeats, as you point out, in number one, the previous request. So I'm on the question of whether they're a news media or not or whether they have public interest waiver or not. And I'm asking you to consider all of their submissions by that date on that question. Now, if what you're going to tell me is that maybe if that's true, then the district court should think about this again, then this will be a very short oral argument. But if you're going to tell me that even that's not enough, then we want to talk about what's needed. I'm happy to talk about what's needed, Chief Judge Garland, but we're not in a position to say that this isn't enough because there's a substantially greater showing that they make with requests one and two. All right, fair enough. After all, with requests to one and two, it was pretty much bare bones. With respect to one, it seems bare bones. Since January 27, 2012, what's that letter? That's relating to the second court request, Chief Judge Garland. To the second. That's right. So that one has, maybe I'm wrong, but looking at 153 to 154, it's pretty much the same as the third, except it doesn't mention those two specific reports. Am I wrong, or is it different in some other way? I think the two significant reports, the two reports that they plan to editorialize may change the ballgame, and I think that's what you're acknowledging. But leaving that aside, isn't a lot of this stuff already, other than that, say in footnote 7 at A154? Well, there's a lot to consider there. Let me first break down what I see as the difference between the proof with respect to number two and number three. That would be helpful. Now, with respect to number two, they have to show not only the exercise of editorial skill, but the dissemination to an audience. Look at page 154 with respect to request number two. They'll analyze the information, use professional editorial skills to turn raw materials into a distinct work, and share the resulting analysis with the public, either through memoranda, reports, or press releases. Saying they're going to use professional editorial skills to turn raw materials into a distinct work is far less than they say on page 161. There they are naming the reports, right? And they're telling you how the reports are. I also have this at A176 through 181. I'm sorry, it's 181. Okay. Now, there they're talking about two specific reports, right? And there they're talking about when those things are going to be published. I see. And they've identified the titles of those reports. I think that's a far more substantive showing than you have with respect to number two. Some hypotheticals. So on the question of what they pass on to, say, the Washington Times, for example, if they either, by an interview with the Washington Times after reading some document or in a press release to the Washington Times, pointed out what they regard as the highlights and the errors in what the government did, would that not be an example of use of editorial skills to create a distinct work? Yes, it would. But let me contrast that with what we were talking about on page 154. We have this long footnote seven. Now, there's a shorter version of that with respect to request number one, which only mentions four articles. It's very difficult to tell what these articles are all about because I think all they really are are news articles that somehow mention cause of action somewhere in the article. Now, did the district court look at those articles? There's no indication that the FTC read those articles thoroughly. Okay. Well, that may be even worse then. Well, it depends on who the burden is. I think if you produce a list of articles which you say reflects your editorial content, why doesn't that meet your burden if the government doesn't look at those articles? So, for example, we just looked up the Washington Times article that they're referring to, and it includes quotations from Dan Epstein, cause of actions editorial executive editor, which criticizes the government's federal audit on the affiliation between ACORN and ACOA and particularly argues that the GAO made a mistake in favoring a dictionary definition over, I don't know, NeighborWorks accounting. I don't know what any of that means, but the point is they are criticizing. They've got a document somehow, I assume by FOIA. They are criticizing it, and their criticism is picked up by Washington Times, which I think everyone will agree has an audience, however that word is defined. So, isn't it the obligation of the agency to look and see whether these articles actually do what they say? They represent them as being articles that reflect their distribution to an audience of editorialized work. Well, what Putnam said is that the history of disseminating these findings and FOIA requests to the public via news media, it seems to me that given the fact that it is the requester who has the burden to satisfy the standard, whether it's a liberal standard or a high standard, they've got the obligation to provide some meat on the bones in terms of what that editorial content they're providing to a third party is, and I don't believe simply a listing of articles without any indication of what those articles say in terms of whether they're actually providing editorial content, I think that's a burden the applicant should bear and not the agency. All right, fair enough, but you're not disputing that if what they do with the FOIA material is to package it up in a press release that criticizes the government for what they've done and then distribute it through the national media, you would agree that that satisfies the audience, distributing their work to an audience? I think of it more in terms of the second component, Judge Garland. That is whether they have a higher editorial skill. Well, what about and distributes that work to an audience? Can you distribute that work to an audience by sending your press releases to a newspaper, which in turn distributes to an audience? Well, I was with you except for the word press releases. It will depend on what your press release says. I'm talking about a press release of the kind I just described. Yes. If it's a press release, however, that just talks about some other things that this organization is doing. I get it. I'm saying assuming that it is one that applies editorial skills in the sense that it criticizes the government or applauds the government or makes suggestions or anything else and its method of distributing to an audience is by sending it out to newspapers, which have big audiences. That's okay. I think so. Let me say I'm only hesitating because it seems to me that the legislative history of this provision suggests that in order to qualify as a representative of the news media, you would do all three of these things yourself, that you would be the distributor. Now, in your hypothetical, you're not doing the distribution yourself. You are giving it to a third party, and that's one of the things that the district court said. So the Washington Post, which distributes to me on my doorstep through an independent contractor who they insist is not an employee of the Washington Post, is not distributing to me? No, I'm not saying that. Okay. So that's the way they get it to me. Assume for the moment that I'm a liar and don't look on the web. But in the good old days, before there was a web, they certainly would have been considered a media outlet, news media, even though they distribute through independent contractors. The point that I'm making is slightly different. It's one that the district court cited, Chief Judge Cronin, and that is it's not enough to simply say we have media contacts. What you do have to show is that your media contacts will get your processed information to an audience. I agree. So that really depends in part on looking at these various articles, right, and seeing whether they do what we've been talking about, correct? That's right. All right. Let's just see what else. With respect to the public interest question, what do you think significantly means in that? First of all, do you dispute any of the other elements? Do you dispute that this provides public understanding of the operation? We're talking about the public interest waiver. Yes, yes. Is the real issue here what significantly means, or is there something else? No, I think that's it. And I think in response to the questions you posed for public counsel, I think as a general proposition, it is the same inquiry as the audience inquiry with respect to news media. The only difference I see is this. With respect to the news media inquiry, the audience analysis, it seems to me, has to do with what this organization does systematically, okay? With respect to the public interest exception, as I read it, that exception is based on the dissemination of a particular FOIA request, and so an organization could meet the public interest significant requirement. If it showed in a particular instance that it got the information to the white segment of society, whether or not it never did again, I think it's how often you do it. That's interesting. So you're focusing on that. I can't get him to repeat that. No, I'm sorry. Not because I disagree with it. I can't quite understand it. The differences I see with Judge Santel with respect to this public interest significant impact or significant improvement of understanding is this, that in terms of the representative of the media, they have to make a showing that they do this on some sort of regular basis. It's not a one-shot deal. But with respect to the public interest exception, that goes to the particular FOIA request, and there they have to show both quantitatively and substantively that that dissemination of information will increase public understanding to some segment of the public. Will in fact do so or simply will potentially do so? I think will in fact do so. How can they do that until they get the information? At the time they're making the application, they don't know what they're going to find out. Well, it may be that what they find out isn't nearly as rich as what they expected it to be, so it may not in fact significantly contribute. It only has to say likely, right? We have the word likely in the statute. Likely would have to be. Well, I was going to focus on another aspect of that, and that is the first aspect of the public interest exception, I thought, made some representation. Well, it's also under the representative of the media. That is, I think the first aspect of the test for either one, which isn't in controversy here, suggests that this information has some sort of potential news value. Okay. I think that carries with it, Ben Sentel, a certain inference or a likelihood that there's going to be a group that either creates an audience or a group that satisfies the increased public understanding. Well, the definition of news is in a separate section, so we have to rely only on Part 3, but it has the word likely in it, so I don't see why this is an issue really. It expressly includes the question word because it is likely to contribute significantly. So you're right, it has to be likely, and you're wrong. It's enough if it's likely. I agree. Okay. So let me just ask, on the point that you made, I have two questions about it. One is when you say the news has to be regular, that requirement of regular is not in the statute, but there is a requirement that it uses and distributes to suggest this maybe isn't a one-shot deal. Exactly. I'm with you on that. But that also suggests that this one, for the news media purpose, doesn't have to be of great public interest. It is the request that they're making now doesn't have to be as long as they generally do that or they've done that in other circumstances. Is that right? You were arguing that under Part 3, the particular request has to be of significant public interest, and that's different from the news media, and I'm going to turn it around on you. Doesn't it also mean that the particular request doesn't have to be of significant interest as long as, let's say it's the New York Times, for example, just to pick yet another newspaper since we've now named three, and they make a FOIA request for something that's not very important, but there's no doubt that they are a representative of the news media. They don't have to prove anything about that particular request, do they, to fit within the news media element? As I recall in our brief, Your Honor, we took the position that there had to be some sort of nexus with the dissemination to an audience for news representative status of the information that was obtained through the FOIA request. And why is that? Where did that come from in the statute? Well, I was about to say that's the position we took in our brief. But based on the question that you posed, I'm not entirely convinced that that's correct. Okay. Aside from that, on page 23 of the brief, you seem to be taking the position that with respect to the material in the particular request, they have to show under the definition of news media that the publication of a distinct work has to be established with respect to the material that went from here, as opposed to being their practice to create a distinct work. Look at the last paragraph of page 23. The carryover paragraph that was sent out. It begins with any of that. The COI also argues that the relevant question is whether the request is published as a distinct work in general, not a distinct work from the material received in a given FOIA request. You then take the issue with it. It says that God shall have no support for this proposition, which is directly contrary to the statutory language, that quote, distinct work, quote, unquote, must necessarily be the result of the particular FOIA request that is used. Now, that seems to me, and then you quote, use the statutory skills to turn the raw material into distinct work. It seems to me it's a position that you have to make that show. It doesn't seem to me it isn't. You're taking a position that they have to make a showing that what they're requesting in this request is going to be part of a distinct work. That's right. Now, how can they do this until they know what the material reveals? I think what they have to show, Judge Sentelle, and what they fail to show with Requests 1 and 2, is one, a question of format, but more important with respect to your question, what is the topic that they're going to address? You're absolutely right that they can't know what they're going to say until they get the responses to their FOIA request, but they ought to be able to come up with a hypothesis about the question that they're hoping to answer. Didn't they do that here? Didn't they say what they wanted with it here? I mean, you can't make them tell their absolute purpose, but didn't they do enough here to let you know that they were exploring something with respect to how FTC gives out its consent? I think they did that with respect to the third request. I don't think they did it with respect to Requests 1 and 2. But if the third request is unmuted now by the process that you suggest, what does it matter whether they did it with respect to 1 and 2? You're right. I mean, for that matter, one thing that may have been lost in the discussion today is this, that the process for determining either a public interest exemption or a media exemption is a dynamic process and that you have to reevaluate it each time. They could refile the same request now. There's no question that there'd be no mootness issue because it's happened so much later. We'd have to make a new search. And they'd be entitled to present all this information. Why can't we just rule on the third request if it's not moot? I'm not asking you to concede the mootness issue. If it's not moot, why can't we just rule on the third request, and obviate the necessity of them making a fourth request? You could. You could. The last point that I wanted to make in response to your question, Judson, tell us this. Just because you have been denied media status at one point doesn't mean you can't acquire it later. On the other hand, just because you have it at one point doesn't mean you have it in perpetuity. It always depends on the fact of the time you make your application. All right. Well, how many other slides are on the left? All right. Somebody? You're going to represent all of the people at that table, right? Okay. You see, up here I've gotten a number of concessions from the government. I wouldn't say too much that might cause you to lose those concessions. I will try very much not to lose those concessions, but in particular, to emphasize, it's remarkable that the government just came up here and said that it's not about the content, but about whether the government agrees about the topic of what causative action is going to write on it. I know you're spending a lot of time on this question of whether the government agrees with you or not. I don't think the panel really cares about that question. The question is whether we think that it's significant, either in the sense that Judge Gintel was talking about significant on the second matter, significant in the sense of significant public understanding or significant in the sense of quantum. But I wouldn't worry about this question about it depends on what a particular agency thinks of you. So I really only have one question for you, which is what about this burden of proof issue? Why is it enough, assuming that these articles are, for example, as good as the Washington Times article, which I've found because I'm not a complete Luddite, why didn't you have to tell the agency specifically, look, this is what these articles actually do. They actually take into consideration our editorialized content. Your Honor, the burden of proof is just what's within the administrative record. This court is reviewing the FOIA as part of the Administrative Procedure Act. It's codified in Title V. And even taking a look at the language of that footnote 7 on page 167. I'm right, though. The burden of proof is on the requester to show that they're entitled, right? Correct. And that was satisfied by the inclusion of these articles. And if I could reference you to just one of the titles of one of the articles, Accountability Group Seeks IRS Investigation of Acorn Affiliates. That's cause of action. That says it's straightforward. And while Federal Trade Commission has enough effort and time to check cause of action's website, it doesn't follow simple links, simple links in the FOIA request to confirm or deny the existence of the purported assertion that's tied to that footnote in the FOIA request. Did you furnish the articles to the committee? Your Honor, the paper copies were not furnished, but links were. They were furnished. What were those links in? What we have here is a paper document. Correct. Was something sent electronically that gave them those links? Or where did they get those links? So, this letter was sent via e-mail and U.S. mail. The links could have been typed in. Could have been. Or word. So, they would have had to type in and copy, or at least cut and paste, rather than having to actually read it. Right? Because it was sent electronically, it's very easy for any entity, especially the U.S. government with Adobe PDF, to OCR, optical character, recognize the text of a document that is sent to it. You wouldn't have an actual hyperlink they could click on. A hyperlink is written, but it's not blue. It's not an actual live hyperlink. An actual hyperlink. You gave the URL, or you gave something else? Yeah, the URL is right there, Your Honor. And it could have been turned into a hyperlink. So, in terms of Luddite language, you gave them a citation, but you didn't give them the content. Correct. We provided them the citation, and one of the citations- Is that sufficient to give them the citation, as opposed to giving them the content? Absolutely, Your Honor. It is sufficient. Why is that absolute? That's a very strong word, Counsel. Why is that absolute? Because that citation itself is part of the administrative record, and the burden of proof, you're correct. If you have the burden of proof, why did they have to go get the content? Why don't you furnish them, Counsel? The content was furnished by a citation. The content and the citation are two different things. You give them the citation. Why didn't you have to give them the content? Because there is no positive law- Either by an attachment or by a paper penalty. Your Honor, there's no positive law that requires it. There's no opinion in any court that I'm aware of that requires that. And especially construing FOIA, statutorily required, as broadly, that this should be liberally construed. This should be enough. Thank you, Counsel. Any other questions? Moreover, the burden of production, it's not about a persuasion of proof. It's just about a simple prima facie showing. Again, this is a low initial burden. Could we pause on that citation with that proposition, that it's a burden of production? I'm not saying you're wrong. I just don't know. I'm not immediately aware of the burden. I mean, I think the word absolutely would work perfectly if this is only a burden of production question. It might be a little harder if it's a burden of proof question. I don't know what the answer is, but we'll find out. We will 20-inch you that. I think we can, using Westlaw, we can do the same. Thank you. Thank you, Your Honor. We'll take the matter under submission. Well, I don't know. Is there any other questions? Yep, citation. Excellent. The citation itself with regard to, I apologize, to establish a factual element is not the same as carrying a burden to prove the fact. So this is in the Daily Caller amicus brief. It talks about this particularized burden. And that brief cites Director versus Greenwich Collieres. That's the Supreme Court opinion. Correct. Yeah. But is that on the question of who bears the burden of being a requester? It's not. That's a... It talks about the APA distinction between the burden of persuasion and the burden of production. There's definitely a difference. The question is which applies here. Yeah. We know there's a difference. I'm happy to have you do some work. And I see somebody from the Daily Caller waving in the back, so we can ask them who filed a separate amicus brief to provide you with the citations. If you can provide them to us, even better. Correct. We will do so. Okay. And if the government thinks that the burden is different, you can tell us. I'm not saying this is in any way dispositive, but it's worth knowing what the answer to this question is. We'll take the matter under submission.
judges: Garland, Brown, Sentelle